UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAVID COLEMAN**,

    Plaintiff,

v.                                                                   **Case No. 8:05-cv-00930-T-17-TBM**

**LAZY DAYS RV CENTER, INC.**,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    This cause comes before this Court on Plaintiff's, David Coleman, Motion for Partial Summary Judgment, filed March 30, 2006 (Dkt. 32) and Defendant's, Lazy Days RV Center, Inc., Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed May 5, 2006 (Dkt. 38). For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

    On October 5, 2004, Plaintiff, David Coleman ("Coleman"), a resident of the Commonwealth of Pennsylvania, filed this action against Defendant, Lazy Days RV Center, Inc. ("Lazy Days"), a Florida corporation, alleging violations of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 *et seq.* (the "Federal Odometer Act") with intent to defraud, among other counts. This case was originally filed in the United States District Court for the Middle District of Pennsylvania. Lazy Days challenged both jurisdiction and venue in the Middle District of Pennsylvania. While asserting the Court's jurisdiction over this controversy, U.S. District Judge James M. Munley of the Middle District of Pennsylvania transferred the case at bar to the United States District Court for the Middle District of Florida in an order entered on May 6, 2005. Thereafter, Coleman filed an Amended Complaint on

November 11, 2005 (Dkt. 21), and Lazy Days answered the complaint on December 9, 2005 (Dkt. 25). Coleman moved for partial summary judgment on March 30, 2006 (Dkt. 32), and Lazy Days filed a memorandum in opposition on May 5, 2006 (Dkt. 38). The following are found to be "facts" for the purpose of resolving Plaintiff Coleman's Motion for Partial Summary Judgment.

On December 22, 2003, Coleman purchased from Lazy Days a recreational vehicle identified in Coleman's complaint as a 1990 Prevost Liberty Bus with the following designated Vehicle Identification Number: 2P9M33400K1001912. The sale was the product of negotiations between Coleman and representatives of Lazy Days that involved Lazy Days forwarding to Coleman a video about this particular vehicle. The video represented that the vehicle was in mint condition with low mileage, specifically that the vehicle had 66,000 miles on it. On the day of sale, Lazy Days issue to Coleman an Odometer Disclosure Statement stating that to the best of Lazy Days' knowledge, the cumulative mileage for the vehicle was 66,069.[1]

In the package of documents for Coleman to sign to complete the sale, Lazy Days did not include the vehicle's title certificate. Lazy Days claims that it did not have the title certificate available for Coleman on the day of sale because it was being held by the lienholder for the prior owner, and Lazy Days did not receive it until January 2, 2004. The title certificate does not indicate the mileage of the vehicle, but rather describes the vehicle as "exempt" in the section titled "Odometer Status." Coleman signed the sales contract on December 22, 2003, and paid Lazy Days $142,014.56 for the vehicle, including $8,038.56 paid as sales tax. The vehicle was delivered to Coleman on December 27, 2003. After the sale and delivery of the vehicle to Coleman, Lazy Days had Coleman sign various documents that branded the vehicle as exempt from odometer disclosures, including a Title Reassignment Supplement and the certificate of title.

Subsequent to the sale, Coleman had the recreational vehicle inspected by an authorized

---

[1] The Odometer Disclosure Statement also provides two options for the seller to select if applicable. Neither of the options were checked by Lazy Days. The options read as follows:
(1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
(2) I hereby certify that the odometer reading is NOT the actual mileage. WARNING - ODOMETER DISCREPENCY. (Ex. #3 for Dkt. 21).

Pennsylvania inspection station. The inspection revealed that the vehicle was in poor condition and needed mechanical work. The inspector also concluded that the vehicle had been driven well in excess of the 66,069 miles stated in the Disclosure Statement. After receiving the results of the inspection, Coleman investigated the vehicle further and discovered that a prior owner had reported an odometer reading of 82,000 in March 1993, approximately ten years prior to Lazy Days' sale to Coleman. Since 1996, all other title certificates branded the vehicle as exempt from odometer disclosures. Coleman asserts that at no time did Lazy Days ever disclose to Coleman that the vehicle was exempt from odometer disclosures.

On December 12, 2003, just ten days prior to Coleman's purchase, Lazy Days had purchased the vehicle in question from Robert and Jeanie Ankney ("the Ankneys"). The odometer disclosure received by Lazy Days from the Ankneys was accompanied by an affidavit that stated that the face of the title certificate branded the vehicle as exempt from odometer disclosure because it was more than ten (10) years old. This affidavit was signed by Lazy Days' title agent, Mr. Sienkiewicz. Mr. Sienkiewicz has testified that he initially and mistakenly wrote in the odometer reading although the vehicle was exempt from such disclosures. Mr. Sienkiewicz also testified that it was standard business practice for Lazy Days to disclose all odometer readings to buyers regardless of the fact that vehicles may have been exempt from such disclosures. Lazy Days has asserted that virtually all of the vehicles it sells are exempt from odometer disclosure, and that, therefore, its prior business practice of disclosing all odometer readings to buyers was not an intent to defraud buyers, but simply an effort to voluntarily disclose odometer readings that they believed to be accurate. Mr. Sienkiewicz also testified that Lazy Days has since changed its policy to now refrain from disclosing odometer readings on any exempt vehicles.

Coleman initiated the present lawsuit alleging that Lazy Days misrepresented the actual odometer reading and caused the odometer to be tampered with so as to defraud Coleman. Coleman alleges that Lazy Days' disclosure of the odometer reading and failure to inform him that the vehicle was exempt from disclosure are evidence of Lazy Days' violation of the Federal Odometer Act with intent to defraud. Coleman alleges that Lazy Days willfully misrepresented the mileage of the vehicle when it failed to disclose that the vehicle was exempt from disclosure, and, according to Coleman, this failure to disclose exempt status demonstrated that Lazy Days

knew there was reason to believe that the odometer reading was unverifiable and unreliable. Coleman asserts that a vehicle exempt from disclosure is, by virtue of this status, automatically subject to suspicion regarding its reliability. Further, Coleman argues that Lazy Days' withholding of the certificate of title was also an effort to intentionally defraud Coleman by further concealing the exempt status of the vehicle. Lazy Days asserts that the disclosure of the odometer reading was its former standard business practice on all vehicles, including those that were exempt from disclosure, and that they, therefore, did not have the requisite intent to defraud Coleman. Further, Lazy Days asserts that it did not wrongfully withhold the certificate of title as they did not have it in their possession because it was being held by a lienholder of the previous owners, the Ankneys. Coleman moves for partial summary judgment on Count I of his complaint, which is based on the federal mandatory odometer disclosure law and civil penalties contained within 49 U.S.C. §§ 32701-32710.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

The federal mandatory odometer disclosure law is codified in 49 U.S.C. §§ 32701-32710. The Federal Odometer Act imposes on car dealers various requirements intended to ensure that automobile consumers are provided with accurate statements of a car's mileage. *See* 49 U.S.C. § 32705 ("disclosure requirements"). The Federal Odometer Act makes clear that Congress' intent in passing the Act was to prevent consumers from being defrauded about the mileage of vehicles they were looking to purchase.[2] The law requires disclosure of an accurate odometer statement to a purchaser under certain conditions. 49 U.S.C. § 32705. It provides severe civil monetary penalties for violations, including up to treble damages. 49 U.S.C. § 32710. In order for a civil plaintiff to recover damages under the Federal Odometer Act, s/he must prove (a) a violation of the act, (b) made with intent to defraud. 49 U.S.C. § 32710(a). The Secretary of Transportation has promulgated federal regulations exempting from mandatory disclosure certain classifications of vehicles. 49 C.F.R. § 580.17. This vehicle meets the regulatory requirement for an exemption under 49 C.F.R. § 580.17(a)(3) because it is over ten (10) years old, and as such, it

---

[2]The findings of Congress and purposes of the Federal Odometer Act are as follows:
(a) Findings. – Congress finds that --
    (1) buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;
    (2) buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle;
    (3) an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and
    (4) motor vehicles move in, or affect, interstate and foreign commerce.
(b) Purposes - The purposes of this chapter are --
    (1) to prohibit tampering with motor vehicle odometers; and
    (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers.
    49 U.S.C. § 32701 (Findings and Purposes).

5

qualifies for an exemption to the mandatory disclosure law.[3]

While Lazy Days did not make use of the statutory exemption contained in 49 C.F.R. § 580.17, as stated in previous order, when a seller does nevertheless voluntarily disclose, the statement must be accurate and truthful.  *See* this Court's Order on Motion to Dismiss, March 31, 2006 (Dkt. 34) (holding that the exemptions from disclosure are valid).  A seller's constructive knowledge that the odometer reading, and, therefore, its subsequent disclosure of that reading as accurate, constitutes a violation of the Federal Odometer Act. *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978).[4]  Other courts have also considered what type of conduct constitutes intent to defraud. *See*, *e.g., Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979) (constructive knowledge, recklessness, or gross negligence supports finding of intent to deceive); *Shipe v. Mason*, 500 F.Supp. 243 (E.D. Tenn. 1978) (intent to defraud means willful act with specific intent to deceive), *aff'd*, 633 F.2d 218 (6th Cir. 1980); *Jones v. Fenton Ford, Inc.*, 427 F.Supp. 1228 (D.Conn. 1977) (intent to defraud may be inferred from recklessness).  Both parties agree that the disclosure statement accurately reflected the odometer reading at the time of purchase.

Coleman asserts that Lazy Days' voluntary disclosure of the odometer reading and failure to inform Coleman that the vehicle was exempt from disclosure constitute a violation of the Federal Odometer Act's disclosure requirements.  Coleman asserts that Lazy Days' failure to disclose the exempt status was an effort by Lazy Days to conceal the exempt status in an effort to mislead Coleman into believing that the odometer reading was reliable.  Further, Coleman

---

[3]The regulation reads as follows:
Notwithstanding the requirements of §§ 580.5 and 580.7:
    (a) A transferor or a lessee of any of the following motor vehicles need not disclose the vehicle's odometer mileage:
    (1) A vehicle having a Gross Vehicle Weight Rating, as defined in § 571.3 of this title, of more than 16,000 pounds;
    (2) A vehicle that is not self-propelled;
    (3) A vehicle that was manufactured in a model year beginning at least ten years before January 1 of the calendar year in which the transfer occurs; or
    . . .
    (4) A vehicle sold directly by the manufacturer to any agency of the United States in conformity with contractual specifications.
49 C.F.R. § 580.17.

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the 11th Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

asserts that Lazy Days' disclosure of the odometer reading was made in an attempt to defraud him, because he believes that Lazy Days knew the reading misrepresented the actual mileage of the vehicle. Lazy Days asserts that its disclosure of the odometer reading was its standard business practice at the time, and that it had no reason to believe the odometer reading was unreliable, and, therefore, Lazy Days had no intent to defraud Coleman. While there is no relevant case law regarding the voluntary disclosure of an odometer reading coupled with a failure to disclose a vehicle's exempt status, based on the facts in this case, this Court cannot agree with Coleman that a voluntary disclosure of the odometer reading is inherently indicative of an intent to defraud a buyer absent evidence that demonstrates constructive knowledge, recklessness or gross negligence on the part of the seller.

Pursuant to the Federal Odometer Act, the Secretary of Transportation has imposed the requirement that a dealer must, upon sale of a motor vehicle, include on the title certificate a statement of the vehicle's current mileage. 49 C.F.R. § 580.5(c)) ("the transferor shall disclose the mileage on the title, and not on a reassignment document"). *See Owens v. Samkle Automotive Incorporated*, 425 F.3d 1318 (11th Cir. 2005) (holding that buyer's allegation that seller's failure to provide buyer with certificate of title when seller was falsely marketing the vehicle as "new" was sufficient to state a claim pursuant to the Federal Odometer act); *see also*, *Tuckish v. Pompano Motor Co.*, 337 F.Supp. 2d 1313, 1318 (S.D. Fla. 2004) (holding plaintiff stated a claim of violation of the Act by failing to provide him with the actual title certificate for examination and signature at time of sale pursuant to 49 C.F.R. § 580.5(c), and, as a result, dealer was able to hide and conceal from plaintiff certain negative title history); *Yazzie v. Amigo Chevrolet, Inc.*, 189 F.Supp. 2d 1245 (D.N.M. 2001) (finding that withholding of certificate of title is of violation of the Federal Odometer Act). The regulations also provide that the mileage disclosure may be made on a supplemental form in cases where the vehicle has not yet been titled or where there is no room on the certificate. 49 C.F.R. § 580.5(g).

The regulations implementing the Federal Odometer Act require that an original certificate of title signed by the transferor be used as the sole means of providing odometer information. *See Tuckish*, 337 F.Supp. 2d at 1318 (citing 49 C.F.R. § 580.5). "The central purpose of [the statute] is to make the title document the sole vehicle for odometer disclosures . . . ." *See* Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991).

7

There are two exceptions to this requirement which allow power of attorney to be used as a substitution for an original certificate of title; these occur only when "the transferor's title is physically held by a lienholder," or "if the transferor to whom the title was issued by the State has lost his title and the transferee obtains a duplicate title on behalf of the transferor . . ." *Tuckish*, 337 F. Supp. 2d at 1318 (citing 49 C.F.R. § 580.13(a)).  Coleman asserts that Lazy Days wrongfully withheld the title certificate from Coleman on the day of sale in an attempt to conceal the vehicle's exempt status.  Lazy Days claims that it did not violate the regulatory requirement because the title certificate was not provided to Coleman on the day of sale because it was being held by a lienholder of the prior sellers of the vehicle.  There is no discussion in the record of whether power of attorney was used in lieu of the presentation of the certificate of title.

There is a genuine issue of material fact as to whether Lazy Days wrongfully withheld the certificate of title from Coleman in an effort to misrepresent the actual mileage of the vehicle. Coleman argues that Lazy Days wrongfully withheld the certificate of title, and did not meet either exception under § 580.13(a).  In its defense, Lazy Days asserts that it did indeed fall under the first exception in § 580.13(a): the title certificate was not in its possession because it was being held by a lienholder of the previous owner.  Further, Coleman asserts that the vehicle's title history demonstrates a discrepancy in the vehicle's mileage history and a tampering of the odometer.  However, Lazy Days argues that it did not have any of this information in its possession, and had no reason to know that the odometer had been tampered with.  Due to this dispute in fact, and the previous discussion above, this Court cannot find that there is no genuine issue of material fact, and therefore, cannot grant Coleman's motion for partial summary judgment.

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. 32) be **DENIED**.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 28th day of July 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record